UNITED STATES of America,
Plaintiff-Appellee,

v.

John E. McKENZIE, Dale Bonura, Stephen Farrar, Stephen Reboul, Ronald F. Brink, Thomas R. Woodall and Richard LeBlanc, Defendants-Appellees,

v.

CBS, INC., Movant-Appellant.

In re CBS, INC., Petitioner.

UNITED STATES of America,
Plaintiff-Appellee,

v.

John E. McKENZIE, Dale Bonura, Stephen Farrar, Stephen Reboul, Ronald F. Brink, Thomas R. Woodall and Richard LeBlanc, Defendants-Appellees.

v.

CBS, INC., Movant-Appellant.

In re CBS, INC., Petitioner.

In re CBS, INC., Contempt of Court.

UNITED STATES of America,
Appellant,

v.

CBS, INC., Appellee.

Nos. 83–3026 to 83–3029, 83–3613.

United States Court of Appeals,
Fifth Circuit.

July 9, 1984.

Robert E. Barkley, Jr., J. David Forsyth, Owen A. Neff, Francis R. White, III, Jack M. Weiss, Brent B. Barriere, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., Timothy B. Dyk, David Seidman, Alan S. Tenenbaum, Wilmer, Cutler & Pickering, Tillman L. Lay, Washington, D.C., George Vradenburg, III, Ronald E. Guttman, Allen Y. Shaklan, New York City, of counsel, for CBS, Inc.

J. Laurent Scharff, Washington, D.C., for amicus Radio-TV News.

John P. Volz, U.S. Atty., W. Glenn Burns, Asst. U.S. Atty., Don M. Richard, Lemle, Kelleher, Kohlmeyer & Matthews, Phillip A. Wittmann, Stephen H. Kupperman, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, La., for the U.S.

Ralph Capitelli, New Orleans, La., for McKenzie.

Ralph S. Whalen, Jr., New Orleans, La., for Bonura, Farrar, Reboul and Brink.

Walter Rothschild, New Orleans, La., for Woodall and LeBlanc.

Before JOHNSON, HIGGINBOTHAM, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

This is an appeal by private prosecutors originally appointed by the United States District Court for the Eastern District of Louisiana, 570 F.Supp. 578, from the judgment of the very court which appointed them. The judgment appealed from dismissed an application for an order requiring CBS to show cause why it should not be held in contempt and the judgment also dismissed the contempt proceeding initiated by the district court against CBS. The prosecutors allege appellate jurisdiction pursuant to the Criminal Appeals Act, 18 U.S.C. § 3731, which permits appeals "by the United States." [1] This Court holds that the prosecutors are without authority to represent the United States in the unique circumstances of this case; consequently, we dismiss the appeal for want of jurisdiction.

The events leading to this appeal can be summarized briefly. On January 14, 1983, the defendants in *United States v. McKenzie* filed a motion seeking to enjoin CBS from broadcasting "60 Minutes" in the Dallas area on January 16, 1983, because a segment of the program involved the homicide investigation by New Orleans police which resulted in the prosecution in *McKenzie* of seven New Orleans police officers. [2] Although CBS was not served with the *McKenzie* defendants' motion, counsel for CBS appeared at a hearing conducted by the district court on January 14, 1983. At that hearing the district court orally directed CBS to produce within two and a half hours for its *in camera* review a copy of the script of the program or to read the script over the telephone so that the court could determine whether this segment would prejudice the McKenzie defendants' right to a fair trial. Although CBS objected to turning over the script, approximately two and a half hours later counsel for CBS indicated that CBS would produce the script. Shortly afterwards, counsel advised the court that CBS would not produce the script based on CBS' good faith belief that the court's production order was an impermissible prior restraint on CBS' first amendment rights. [3] The court then issued

1. The prosecutors have styled this appeal *United States v. CBS, Inc.* The proceeding initiated by the district court was styled *In re CBS, Inc., Contempt of Court.*

2. The *McKenzie* defendants' trial was scheduled to begin in Dallas on February 7, 1983; the defendants contended that the broadcast would violate their sixth amendment right to a fair trial. The United States Department of Justice

did not join in the defendants' effort to enjoin the broadcast.

3. In chambers that afternoon, an attorney with a local New Orleans firm who had originally stated that he represented CBS informed the court that CBS' New York counsel's instructions were that the New Orleans firm was not authorized to represent CBS. Shortly afterwards, another associate from the local New Orleans firm

a second order enjoining CBS from broadcasting the segment of "60 Minutes" dealing with the New Orleans police investigation "anywhere in the United States." The court stated that its injunction was issued in view of CBS' refusal to comply with the production order; the court said that it would reconsider its injunctive order if CBS would produce the script. Furthermore, the court stated that if CBS failed to turn over the script, the court would request the United States attorney to institute criminal contempt proceedings against CBS. During a telephone conference call on the record, CBS' deputy general counsel requested that the court stay the order to produce the script until CBS could seek expedited review; the court, however, refused to stay the order. The next day, January 15, 1983, CBS petitioned this Circuit for a writ of mandamus or for a stay of both orders—the production order and the order enjoining the broadcast. This Court stayed the order enjoining the broadcast but did not act on the motion to stay the production order, deferring consideration of this motion until supplemental briefs were filed.[4] *United States v. McKenzie,* 697 F.2d 1225 (5th Cir.1983). On January 15, 1983, after a hearing, the district court limited the injunction both geographically (to the Dallas metropolitan area) and temporally. This Court again stayed the injunction, stating that the evidence was too speculative on the impact of the program on the Dallas metropolitan area jury pool to support enjoining the broadcast. *United States v. McKenzie,* 697 F.2d 1228 (5th Cir.1983). Justice White and, thereafter, Chief Justice Burger declined to vacate this Court's second stay order. *Bonura v. CBS, Inc.,* 459 U.S. 1313, 103 S.Ct. 665, 74 L.Ed.2d 592 (White, Circuit Justice, 1983); *Bonura v. CBS, Inc.* (Burger, C.J., Jan. 16, 1983)[5] (unreported).

On January 16, 1983, CBS broadcasted the segment as scheduled. The district court then requested the United States Attorney for the Eastern District of Louisiana to institute contempt proceedings against CBS for refusing to produce the script for *in camera* inspection. On February 2, 1983, the judges for the Eastern District of Louisiana adopted a resolution asking the United States Attorney for that district to prosecute the criminal contempt action against CBS for noncompliance with the district court's January 14, 1983, production order. On February 7, 1983, the district court initiated a new proceeding, *In re CBS, Inc. Contempt of Court,* 570 F.Supp. 578 (E.D.La.1983). In "Findings and Reasons" formulated by the court in initiating its contempt action, the court stated that on January 14, 1983, it "adjudged" CBS to be in contempt of court[6]

returned to chambers and explained that the prior denial of CBS' representation was the result of a misunderstanding. CBS' refusal to produce the transcript followed its clarification of the representation issue.

4. This Court later instructed the clerk's office that the Court considered the petition to stay the production order to be moot and expected no further briefing by the parties.

5. In separate appeals and mandamus proceedings now consolidated with the instant appeal, CBS challenged the validity of the district court's January 14 and January 15 orders enjoining the broadcast. CBS concedes that the issues concerning the injunctions are now moot but urges that the validity of the production order is still a viable issue. Since the district court issued the January 14 injunctive order precisely because CBS had not complied with the production order, CBS asks this Court to

review the production order in the appeal from the January 14 injunctive order. *See Carter v. American Telephone & Telegraph Co.,* 365 F.2d 486, 488–89 (5th Cir.1966), *cert. denied,* 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967) (where an order not itself appealable served as "the reason" for an appealable injunctive order, this Court reviewed the underlying order as part and parcel of the appealable order). CBS also filed a petition for writ of mandamus and prohibition seeking to set aside and prohibit enforcement of the January 14 production order.

In asking this Court to review the validity of the production order, CBS asks for an advisory opinion. The constitutionality of the production order is a moot issue. The appeals and mandamus proceedings in Nos. 83–3026—83–3029 are dismissed as moot.

6. The transcript of the January 14, 1983, hearing makes no reference to an "adjudication" of criminal contempt.

for (1) retaining local counsel to represent it and knowingly attempting to deny local counsel's authority [7] and for (2) failure to comply with the court's order to produce the script without seeking appellate review within the time fixed for compliance.[8]

■ By letter of March 11, 1983,[9] the United States Justice Department informed the United States Attorney for the Eastern District of Louisiana that "a contempt prosecution against CBS is not an appropriate exercise of the Department's discretion" in view of the law and the circumstances of the case. The Justice Department declined to prosecute primarily because of the substantiality of CBS' first amendment defense and the likelihood that this defense would be available to CBS in a contempt prosecution. As additional reasons for its decision the Justice Department mentioned the fact that (1) the record would not support a finding that CBS' conduct was "willfully disrespectful or obstinately insubordinate"; (2) noncompliance was a single instance of short duration which, practically speaking, had been rendered moot;[10] (3) the court's order was wholly collateral to the underlying *McKenzie* prosecution and the Department had not joined in the *McKenzie* defendants' efforts to enjoin the broadcast.

On March 21, 1983, after receiving the Justice Department's response to its request to prosecute CBS for criminal contempt, the district court for the Eastern District of Louisiana appointed private prosecutors to prosecute the criminal contempt.[11] On April 12, 1983, the private prosecutors filed an application for an order requiring CBS to show cause why it should not be held in contempt. The allegations of contempt in the application to show cause were that CBS had failed to comply with the court's production order, that CBS had breached an agreement to comply with the production order, and that CBS had willfully misrepresented to the district court the authority of local counsel to represent it. On April 28, 1983, CBS filed an opposition and moved to dismiss the application.

Thereafter, the judge in *McKenzie* found himself to be disqualified; the Chief Judge of the district court for the Eastern District of Louisiana requested that this Court appoint a judge from another district to try the case; on May 6, 1983, this Court, upon the advice "that all judges in the Eastern District of Louisiana are disqualified," appointed Judge Veron of the district court for the Western District of Louisiana. On May 18, 1983, the "new" district court for the Eastern District of Louisiana, *i.e.,* Judge Veron, directed that the case be designated *CBS Contempt Proceedings*, 570 F.Supp. 578. After further briefing the district court held a hearing on July 20, 1983. On September 1, 1983, the "new" district court issued a well-considered opinion dismissing the application for an order to show cause. The court found that the production order was unconstitutional and

7. In threatening CBS with contempt proceedings on January 14, 1983, the court did not refer to CBS' conduct concerning the authority of local counsel as one of the reasons for a contempt finding. The court referred only to CBS' refusal to produce the script.

8. CBS asked the district court to stay its February 7, 1983, order but the court has not acted on the request.

9. A memorandum of March 7, 1983, reviewing the facts and the law, accompanied the March 11 letter.

10. A criminal contempt prosecution survives even where subsequent events have mooted the basis for the district court's order because the purpose of such a prosecution is to vindicate the court's authority by punishing noncompliance with its orders. *United States v. United Mine Workers,* 330 U.S. 258, 294, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947).

11. The private prosecutors alleged that their appointment was proper pursuant to Fed.R. Crim.P. 42(b). Citing *Brotherhood of Locomotive Firemen v. United States,* 411 F.2d 312 (5th Cir.1969), CBS challenges the prosecutors' appointment. CBS argues that although Rule 42(b) allows the appointment of private counsel to prosecute in criminal contempt cases, this Circuit permits only government law officers to prosecute the proceedings. Because of our disposition of this case, we need not address this issue.

that CBS could not be held in criminal contempt for refusing to comply with an unconstitutional order.[12] In addition, the court rejected the contention that CBS could be held in contempt for violating an agreement to comply with the production order because CBS never willingly agreed to produce the script and never waived its right to contest the validity of the order. Furthermore, the court found that CBS' temporary denial of local representation "did not rise to a contemptuous level." Accordingly, the court found that CBS was not guilty of criminal contempt. On September 22, 1983, the district court rendered a judgment in accordance with its opinion; the judgment denied the application of the prosecutors for issuance of an order to show cause and dismissed the criminal contempt proceedings initiated by the court itself against CBS. The private prosecutors here appeal the district court's dismissal of the contempt proceedings initiated against CBS by the court.

■ The peculiar posture of this case dictates its resolution. The private prosecutors allege appellate jurisdiction pursuant to the Criminal Appeals Act, 18 U.S.C. § 3731. This section permits appeals only "by the United States".[13] Under the unique circumstances of this case it is inconceivable that the private prosecutors represent the United States. It was the district court for the Eastern District of Louisiana that initiated this contempt proceeding. After the Justice Department declined to prosecute, the district court appointed the private prosecutors to pursue

the action the court had initiated. The private prosecutors then filed their application for an order to show cause. Upon the advice of the Chief Judge of the Eastern District of Louisiana that all judges in that district were disqualified in the case, this Court designated Judge Veron of the Western District to try the case. The entire control, responsibility, and authority of the district court for the Eastern District thereby became vested in Judge Veron. Judge Veron thus became the district court for the Eastern District and that court denied the application and dismissed the contempt proceedings it had initiated.

The dismissal of the proceedings effectively revokes the prosecutors' appointment. By adopting a false premise, namely that the court is divisible into chronologically distinct personalities, the prosecutors reach a faulty conclusion, to wit, that they represent the United States. The court does not find its expression in people—the court is the court. The prosecutors cannot reasonably argue that even after Judge Veron dismissed the action they still represent the district court for the Eastern District of Louisiana.[14] Judge Veron became the district court for the Eastern District, fully possessed of all the court's power, responsibility, and authority, and it was that court that dismissed the contempt proceeding. The same court that on February 7, 1983, initiated the contempt proceeding, on September 22, 1983, terminated that proceeding. By so doing, the court indicated that it did not wish the contempt proceeding to be pursued. The private prosecutors who derived their representa-

---

**12.** The court found that the order was a prior restraint violative of CBS' first amendment rights and that less restrictive alternatives to the order had been available.

**13.** 18 U.S.C. § 3731 provides in pertinent part: In a criminal case an appeal by the United States shall lie to a court of appeal from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.
The section has been construed to apply to criminal contempt proceedings brought by the Unit-

ed States Department of Justice. *United States v. Goldman,* 277 U.S. 229, 235, 48 S.Ct. 486, 487, 72 L.Ed. 862 (1928); *United States v. Sanders,* 196 F.2d 895, 897 (10th Cir.), *cert. denied,* 344 U.S. 829, 73 S.Ct. 33, 97 L.Ed. 645 (1952).

**14.** During oral argument before this Court the prosecutors argued that the court that found itself to have been treated contumaciously then recused itself and placed the issue before an arbiter. The prosecutors err in conceiving of the district court for the Eastern District as separate and distinct from the arbiter, Judge Veron.

tion authority wholly from the district court for the Eastern District of Louisiana have had that authority wholly terminated by that same identical court. Under these circumstances we cannot say that the private prosecutors now on appeal represent the "United States." The private prosecutors therefore no longer represent the court; they appeal on their own behalf from the court's denial of their application for a show-cause order. Consequently, this Court has no jurisdiction over this peculiar appeal.

APPEAL DISMISSED.