Dear William D. Missouri
You have requested our opinion whether a State's Attorney who is appointed by a judge to prosecute a contempt proceeding must obtain the approval of the judge before dismissing, or entering a nolleprosequi of, the contempt charge.
We conclude that a State's Attorney designated to prosecute a contempt charge retains the usual prosecutorial discretion to dismiss, or enter anolle prosequi of, a criminal charge without special court approval. The exercise of that discretion is subject to the constitutional and statutory limitations enforced by the courts with respect to any criminal charge.
However, we do not end our analysis with that conclusion. Because the question you raise is at the fault line of the separation of executive and judicial powers, we suggest a procedure to accommodate the respective roles of the court and the State's Attorney in criminal contempt proceedings. In particular, when the contempt proceeding has been initiated by the filing of a court order by a judge, the State's Attorney should advise the initiating judge of the intention tonolle pros the charge so that the court has an opportunity to appoint a substitute prosecutor.
 I Contempt Power
A. In General
The judicial contempt power is an inherent power of the courts derived from the English common law. Young v. United States ex rel. Vuitton etFils, S.A., 481 U.S. 787, 795 n. 8 (1987);[1] State v. Roll,267 Md. 714, 726-27,298 A.2d 867 (1973); see also Annotated Code of Maryland, Courts and Judicial Proceedings Article ("CJ") § 1-202(a). "Contempt" has been defined as:
 a despising of the authority, justice, or dignity of the court; in a more general sense, a person whose conduct tends to bring the authority and administration of the law into disrespect or disregard, interferes with or prejudices parties or their witnesses during litigation, or otherwise tends to impede, embarrass, or obstruct the court in the discharge of its duties, has committed contempt.
Goldsborough v. State, 12 Md. App. 346, 355, 278 A.2d 623 (1971). The purpose of the contempt power is to uphold the dignity of the judicial process and to enforce court orders. Johnson v. State, 100 Md. App. 553,561, 642 A.2d 259 (1994). Contempt proceedings in the Maryland state courts are governed by Maryland Rules 15-201 et seq., which codify many of the procedures developed in the case law for prosecution of contempt cases.
B. Types of Contempt 1. Criminal and Civil Contempt
A contempt proceeding may be classified as civil or criminal. Generally, this classification turns on the purpose of the proceeding and type of penalty imposed on the alleged contemnor. A criminal contempt proceeding is punitive in nature, while a civil contempt proceeding serves a remedial purpose. Johnson v. State,100 Md. App. 553, 555, 642 A.2d 259 (1994). A criminal contempt proceeding is intended to vindicate the authority of the court and punish disobedience to its orders. State v. Roll, 267 Md. 714, 727, 298 A.2d 867 (1973). A civil contempt proceeding is designed to compel compliance with court orders, often for the benefit of parties to litigation. A penalty in a civil contempt proceeding therefore must contain a purging provision — i.e., a provision that permits the subject of the contempt order to avoid punishment by complying with the court order. Roll,267 Md. at 728; Rule 15-207(d)(2). In practice, the distinction between civil and criminal contempt is not always easily made. See International Union,UMW v. Bagwell, 512 U.S. 821, 827 n. 3 (1994).
2. Direct and Constructive Contempt
The Maryland Rules also codify a longstanding distinction in the case law between "direct" contempt and "constructive" contempt. Direct contempt is "a contempt committed in the presence of the judge presiding in court or so near to the judge as to interrupt the court's proceedings." Rule 15-202(b). Constructive contempt, also known as "indirect contempt," means "any contempt other than direct contempt." Rule 15-202(a). Courts look to the nature of the alleged contemptuous act to determine whether a contempt is direct or constructive.Compare State v. Roll, 267 Md. at 734 (refusal of witnesses to testify in grand jury constituted constructive contempt) with Mitchell v.State, 320 Md. 756, 766, 580 A.2d 196 (1990) (defendant's obscene gesture to judge following imposition of sentence constituted direct contempt). The classification of an alleged contempt as direct or constructive determines the procedure for adjudication of the charge.
C. Contempt Proceedings 1. Summary Proceedings for Direct Contempt
A direct contempt may be punished summarily — that is, a court may deal promptly and decisively with blatantly contemptuous behavior.Mitchell v. State, 320 Md. at 762-63. There is no requirement for a separate hearing or the presentation of formal evidence, although the defendant must be given an opportunity to respond to the charge or to allocute on punishment.[2] Id. at 768-69;Johnson v. State, 100 Md. App. at 556; Rule 15-203(a). In order to institute direct contempt proceedings, a judge must have personal knowledge of the facts constituting the alleged contempt. See State v.Roll, 267 Md. at 732; Rule 15-203(a). The court issues a written order stating whether the contempt is civil or criminal, summarizing the facts, and imposing the sanction. Rule 15-203(b). If the court decides not to adjudicate a direct contempt summarily, the judge enters an order identifying the alleged contemnor and describing the evidentiary facts. The procedures for constructive contempt govern subsequent proceedings. Rule 15-204.
2. Constructive Contempt Proceedings
Constructive contempt may not be punished summarily because the court has not personally observed the facts. Roll v. State, 15 Md. App. 31,48, 288 A.2d 605 (1972), aff'd in part, modified in part, 267 Md. 714,298 A.2d 867 (1973). "The reason such proceedings are not permitted is that there is no need for summarily disposing of an alleged contempt when the behavior of the accused is not personally known to the judge or does not occur so near to the court as to interrupt proceedings then being conducted by the judge." State v. Roll, 267 Md. at 734. Instead, in a constructive contempt proceeding, the court must give the accused an opportunity to contest the alleged basis for the contempt and show cause why a contempt order should not be entered. Betz v. State,99 Md. App. 60, 66, 635 A.2d 77 (1994).
A court may commence a constructive criminal contempt proceeding on its own initiative by filing a court order or by requesting the State's Attorney, Attorney General, or State Prosecutor to file a petition commencing a proceeding. Rule 15-205(b)(1), (5). Those prosecutors may also file a petition either on their own initiative or at the request of "any person with actual knowledge of the facts constituting a constructive criminal contempt." Rule 15-205(b)(2)-(5). A constructive criminal contempt proceeding is docketed as a separate criminal action from the proceeding in which the contempt allegedly occurred. Rule 15- 205(a)-(b). The petition or court order must satisfy the standards for criminal charging documents and is served on the defendant in the same manner as criminal process. Rule 15-205(d). If the proceeding is commenced by the court on its own initiative, the court may appoint the State's Attorney, the Attorney General, or the State Prosecutor to prosecute the charge. Rule 15-205(c).
A proceeding for constructive civil contempt may be initiated by court order or by petition of a party to the action in which the alleged contempt occurred. Upon request of the court, the Attorney General may also initiate such a proceeding.[3] Rule 15-206(a)-(b). The rule also describes requirements for the contents of the initiating document and various procedures relating to the appearance and waiver of counsel when incarceration is sought as a remedy in a constructive civil contempt proceeding. Rule 15-206(c)-(e).
If a person is charged with both criminal and civil contempt arising from the same incident, the proceedings may be consolidated for hearing and disposition. Rule 15-207(a). A judge who initiates a contempt proceeding that is not resolved summarily and who may be expected to be a witness in the proceeding is ordinarily disqualified from presiding at the contempt proceedings. Rule 15-207(b).
Your request concerns contempt proceedings that have been referred to a State's Attorney for prosecution. Accordingly, we will analyze this issue in the context of a constructive criminal contempt or a direct criminal contempt that proceeds in accordance with Rule 15-204 because the court has not imposed sanctions summarily.
 II Prosecutorial Discretion of the State's Attorney
A. Authority of the State's Attorney
The State's Attorney is a constitutional officer on whom the General Assembly has conferred the responsibility "to prosecute and defend, on the part of the State, all cases in which the State may be interested." Annotated Code of Maryland, Article 10, § 34; see also
Maryland Constitution, Article V, § 9. The State's Attorney has the "the broadest official discretion" to prosecute criminal cases at the trial level.[4] See Murphy v. Yates, 276 Md. 475, 489 (1975).
The discretion entrusted to the State's Attorney ordinarily includes the decision whether to institute prosecution of a particular offense.Brack v. Wells, 184 Md. 86, 90, 40 A.2d 319 (1944). "[S]o long as the prosecutor has probable cause to believe that the accused committed the offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). Included within that discretion is the decision whether or not to enter anolle prosequi and terminate a criminal case. Food Fair Stores v.Joy, 283 Md. 205, 214, 389 A.2d 874 (1978).
B. Discretion to Terminate Prosecution by Nolle Prosequi
A nolle prosequi is the abandonment or discontinuance of a prosecution "by the authorized attorney for the State." Ward v. State, 290 Md. 76,83, 427 A.2d 1008 (1981). It may take a variety of forms, including an election not to prosecute a particular count or charge, the amendment of a charging document to eliminate certain charges, or a motion by the prosecutor to dismiss charges. Hooper v. State, 293 Md. 162, 168-69,443 A.2d 86 (1982). Unlike a stet, a nolle prosequi or dismissal is a "final disposition" that terminates the charge and precludes the State from further prosecution under the charging document that has been "nolleprossed."[5] Id. at 170-71.
Ordinarily, the State's Attorney's discretion to nolle pros or dismiss a criminal charge is viewed as inseparable from the responsibility to conduct the prosecution. See Sinclair v. State, 278 Md. 243, 252,363 A.2d 468 (1976) ("It is clear that state's attorneys in this State have very wide and largely unreviewable discretion as to whether or not topursue the prosecution of criminal offenses.") (emphasis added); 62Opinions of the Attorney General 233, 234 (1977) ("Closely allied with the power to conduct criminal trials is the discretion to abort them by means of the entry of a nolle prosequi in open court.").
The Maryland Rules recognize the discretion of the State's Attorney to terminate a prosecution by entering a nolle prosequi. In particular, Rule 4-247(a) provides, in pertinent part:
 The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court.
The entry of a nolle prosequi is generally within the sole discretion of the State's Attorney, and not subject to judicial approval or the consent of the defendant. Hook v. State, 315 Md. 25, 35, 553 A.2d 233
(1989).
C. Limited Judicial Oversight of Prosecutorial Decisions
Given the separation of powers in the State Constitution, the courts generally exercise only very limited oversight of the exercise of prosecutorial discretion by a State's Attorney.
1. Separation of Powers
A court ordinarily does not review the exercise of a prosecutor's discretion to decline prosecution because of the need to maintain the court's role as a neutral arbiter. Nader v. Saxbe, 497 F.2d 676, 679
n. 18 (D.C. Cir. 1974). Maryland courts have found this deference rooted in the constitutional separation of powers. State v. Hunter,10 Md. App. at 305 (Murphy, C.J.) ("[T]he Office of State's Attorney is not a branch of the judiciary, nor is it directly subject to its supervision."); State v. Lykins, 43 Md. App. 472, 473,406 A.2d 289 (1979), modified, 288 Md. 71, 415 A.2d 1113 (1980) (separation of powers "compels that we brook no lightly assumed interference by the judicial branch with the function of [the State's Attorney] . . . and . . . not arrogate unto our branch supervisory powers which the Constitution does not bestow").
In the Maryland Constitution, the separation of powers principle is stated in Article 8 of the Declaration of Rights.[6] Article 8 does not require a complete separation of the branches of State government, but rather incorporates "a sensible degree of elasticity."Department of Natural Resources v. Linchester Sand Gravel Corp.,274 Md. 211, 220, 334 A.2d 514 (1975). Inevitably, the actions of one branch of government may affect or even nullify the acts of another branch; it is only the essential functions of each branch that are protected from encroachment by the other branches. See 73 Opinions of the AttorneyGeneral 92, 94-95 (1988). Thus, "Article 8 of the Maryland Declaration of Rights places limits on a court's power to review or interfere with the conclusions, acts, or decisions of a coordinate branch of government made within its own sphere of authority." Hamilton v. Verdow,287 Md. 544, 556, 414 A.2d 914 (1980).
2. Judicial Deference
The Maryland appellate courts have cited the separation of powers established in the State Constitution in overturning occasional judicial actions that have attempted to direct a prosecutor to initiate or to terminate a prosecution. For example, in State v. Hunter, above, a circuit court dismissed indictments "for lack of prosecution" apparently because the prosecutor had not adequately summoned three police witnesses. The Court of Special Appeals held that the circuit court lacked the authority to enter what was essentially anolle prosequi, given that the delay did not amount to a denial of the defendant's right to a speedy trial.[7] 10 Md. App. 304-5.
Similarly, as a general rule, a court may not compel a State's Attorney to prosecute a certain case or class of cases. See Brack v.Wells, 184 Md. 86, 90, 40 A.2d 319 (1944). In State's Attorney forBaltimore City v. City of Baltimore, 274 Md. 597, 608, 337 A.2d 92
(1975), the Court of Appeals overturned a portion of a court order mandating that the State's Attorney prosecute "all violations" of the Baltimore City building and electrical codes as "an interference by the judiciary with the discretion vested in the State's Attorney." See alsoUnited States v. White, 689 A.2d 535, 538 (D.C. 1997) (judiciary is normally without authority to question executive branch in exercise of its discretion whether to prosecute a particular case); State v. IowaDistrict Court for Johnson County, 568 N.W. 2d 505, 508 (Iowa 1997) (decision not to bring charge was not appropriate for judicial oversight); State v. Session, 574 P.2d 600, 601 (N. M. Ct. App. 1978) (district court lacked authority to "direct" district attorney to file charge against defendant).
3. Judicial Oversight
While prosecutorial discretion is broad, it is not unfettered. There is a distinction between judicial usurpation of prosecutorial discretion and judicial enforcement of the statutory and constitutional limits to the exercise of that discretion. See McGrath v. Kristensen,340 U.S. 162, 169 (1950). Selectivity in the enforcement of criminal laws or discriminatory prosecution are subject to constitutional constraints enforced by the courts. Wayte v. United States, 470 U.S. 598, 608
(1985); Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886). In certain circumstances, a court may disallow a nolle prosequi if it would deny a defendant a fair trial. Compare Burrell v. State, 340 Md. 426,667 A.2d 161 (1995) with Hook v. State, 315 Md. at 36 (whether nolleprosequi of lesser-included charge would deny defendant fundamental fairness). In these contexts, judicial oversight is a restraint on prosecution.
A prosecutor's decision to enter into a plea agreement with a defendant to resolve a criminal charge, also is subject to limited judicial oversight. Ordinarily, the court's role is to ensure that the defendant is making a knowing and voluntary waiver of rights and that there is a basis in fact for the plea. Only if the agreement would bind the exercise of the court's own discretion in sentencing is court approval of the agreement required. Rule 4-243(c); Blinken v.State, 291 Md. 297, 307-8, 435 A.2d 86 (1981). Even then, the court may not become an active participant in plea negotiations. Barnes v.State, 70 Md. App. 694, 706-8, 523 A.2d 635 (1987).
A requirement of court approval to dismiss criminal charges does not necessarily offend the constitutional separation of powers. For example, under the federal criminal rules, the government must obtain leave of court to dismiss a criminal case voluntarily. See Federal Rule of Criminal Procedure 48(a). Although the rule requires leave of court for a voluntary dismissal, the federal courts largely defer to the prosecutor's decision and leave is denied only if it appears that the prosecutor is acting in bad faith. Rinaldi v. United States, 434 U.S.22, 30 n. 15 (1977). In the rare case in which a court rejects a voluntary dismissal, it is not to compel the prosecutor to prosecute a case he deems unworthy of prosecution, but rather to force a choice by the prosecutor between continuing the case or dismissal with prejudice. Id.; United States v. Hayden, 860 F.2d 1483,1487 (9th Cir. 1988) (Rule 48(a) enacted because of "the concern that prosecutors were . . . harassing defendants by indicting, dismissing, and reindicting without triggering the protections of the double jeopardy clause."). Even in this context, a requirement of court approval of a prosecutor's decision to dismiss a case is largely a restraint on future prosecution rather than a judicial direction to prosecute.
 III Role of the State's Attorney in Contempt Proceedings
As noted above, a court may enlist the State's Attorney as the prosecutor of a constructive criminal contempt proceeding it has initiated in two ways. First, the court may file a court order alleging a criminal contempt and appoint the State's Attorney to prosecute that charge. Rule 15-205(b)(1), (c). Alternatively, the court may request that the State's Attorney commence the contempt proceeding by asking the State's Attorney to file a petition. Rule 15-205(b)(5). In our view, the State's Attorney retains authority to nolle pros the contempt charge in either case. However, a proceeding initiated by court order involves an exercise of inherent judicial power that merits deference by the prosecutor to the court's need to vindicate its authority.
A. Discretion to Nolle Pros Contempt Action Under Court Rules
The Maryland Rules place no limitation on the traditional power of the prosecutor to terminate criminal charges in the context of a contempt case. In particular, Rule 4-247(g), which acknowledges the State's Attorney's authority to nolle pros a charge, refers generally to "a prosecution" and does not distinguish prosecutions initiated by the State's Attorney from criminal contempt proceedings commenced by court order or recommendation under Rules 15-204 and 15-205. Similarly, the contempt rules that authorize designation of the State's Attorney as prosecutor do not condition the exercise of prosecutorial discretion. The statute that governed contempt proceedings prior to the promulgation of rules for those proceedings directed the State's Attorney to prosecute constructive criminal contempt "as though the same were criminal cases." See former Article 26, § 5 (1962). Although the rules that replaced that statute elaborate the procedures for such cases in greater detail, they do not purport to place any greater limitation on prosecutorial discretion.
B. Charges Initiated by Court Referral to State's Attorney
The election by a court to refer a potential contempt charge to the State's Attorney to file a petition rather than simply to initiate the proceeding on its own by court order is significant. In our view, the rule does not provide this option simply for the purpose of delegating the task of drafting the charge to the State's Attorney. Rather, the submission of the case to the State's Attorney to file a petition resembles a typical referral of a potential criminal case to a prosecutor by another department of government. In this instance, the rule apparently contemplates that prosecutor will evaluate the merits of filing the charge and, once filed, the merits of continuing the prosecution. There appears to be no reason to read into the rule a requirement of special court approval of the prosecutor's decision tonolle pros a contempt proceeding commenced in this way.
C. Charges Initiated by Court Order
The issue is less straightforward when a court initiates a contempt proceeding by filing a court order and appoints the State's Attorney to prosecute the case. A constructive criminal contempt proceeding initiated by court order is a rare instance in which the judicial branch exercises one of its "inherent" powers to perform what is normally an executive branch function — the filing of a criminal charge. Nonetheless, there is a "longstanding acknowledgment that the initiation of contempt proceedings to punish disobedience to court orders is part of the judicial function." Young, 481 U.S. at 795.
While the court clearly has authority to commence a criminal contempt case, we believe that the State's Attorney is not obligated to continue a case that the State's Attorney believes to be unworthy of criminal prosecution. Judicial direction of prosecution is antithetical to the court's essential function. Moreover, because the prosecutor will be involved in the investigation and preparation of the case, the prosecutor will frequently be in a better position to assess the merits of the charge. However, the unique nature of a criminal contempt charge counsels that prosecutorial discretion be exercised with sensitivity to the underlying purpose of the court's contempt power.
1. Prosecutor's Authority to Dismiss Charges Filed by Others
The State's Attorney's discretion to terminate prosecutions encompasses charges initiated by other law enforcement officials. For example, in 64 Opinions of the Attorney General 307 (1979), Attorney General Sachs concluded that once a police officer has exercised the initial discretion to issue a traffic or parking citation, then absent a ruling by a trial court, only the State's Attorney may decide not to enforce the citation.
This discretion also extends to charges originally filed by a court officer or agency. For example, in State v. Smith, 305 Md. 489,505 A.2d 511 (1986), the Court of Appeals upheld the authority of a District Court commissioner — a judicial officer — to file a statement of charges. The court held that this practice did not offend the constitutional principles of separation of powers or due process, in part, because the commissioner exercised no control over the subsequent prosecution. 305 Md. at 514. In particular, the Court of Appeals noted that, among other things, "[t]he State's Attorney may terminate prosecution and dismiss the charge by entering a nolle prosequi . . ."Id. Similarly, it is well established that the State's Attorney has authority to enter a nolle prosequi as to an indictment returned by a grand jury even though the grand jury is a body independent of the State's Attorney and, in some respects, is considered "an integral" part of the court.[8] In re Special Investigation No. 244, 296 Md. 80, 91,459 A.2d 1111 (1983); Irwin v. State, 276 Md. 168, 172, 344 A.2d 418
(1975); Brady v. State, 36 Md. App. 283, 289, 374 A.2d 613 (1977).
2. Unique Nature of Criminal Contempt Charge
There is a distinction between the filing of a statement of charges by a District Court commissioner or of an indictment by a grand jury and the issuance of a contempt order. The role of the commissioner or grand jury is limited to a determination whether there is probable cause that the defendant has committed a crime. That role is complete upon the filing of charges. The initiation of charges is not intended to vindicate the authority of those institutions or officers.
By contrast, "[t]he ability to punish disobedience to judicial orders is regarded as essential to ensuring that the Judiciary has a means to vindicate its own authority, without reliance on the other Branches."Young, 481 U.S. at 796 (emphasis added). If the court has no voice in the decision to dismiss the charges it has initiated, then it is dependent upon a co-equal branch of government to vindicate its authority. However, the interest in vindicating judicial authority does not necessarily entail that the traditional role of the prosecutor must be displaced by judicial direction of the case.
3. Practical Assessment of Prosecutorial Merit
The practical necessities of conducting an investigation and prosecution also suggest that the State's Attorney be accorded the normal prosecutional discretion in a contempt case. As with any case, during the investigation and preparation of a case, the perceived merits of the charge may improve or worsen. New evidence, either inculpatory or exculpatory, may be developed; memories may improve or recede. A prosecutor preparing a case for trial will have an opportunity to assess the credibility of witnesses and the weight of the evidence. Counsel for the defendant may present exculpatory evidence to the prosecutor in advance of trial. The prosecutor must be able to respond appropriately to such developments which, in some instances, may require dismissal of the charges.[9] Of course, the court retains its usual role to enforce constitutional and statutory limits on the prosecutor's power to dispose of any criminal charge. Any plea agreement would be subject to the usual judicial scrutiny and approval, if it bound the sentencing court.
If a prosecutor were required to obtain the assent of the court before dismissing a criminal contempt charge, there would remain the question as to whether the prosecutor is to seek the permission of the judge who is presiding over the proceeding, the judge who initiated the contempt charge (who may be a different judge from the presiding judge[10]), or both. It is unlikely that the permission of the presiding judge would be required as that judge is performing a normal judicial function that does not include supervision of such prosecutorial decisions. If the prosecutor were required to seek the assent of the initiating judge, that judge would be cast in a purely prosecutorial role.[11] In any event, it would entangle the judiciary in the details of the exercise of prosecutorial discretion.
4. Recommended Procedure
In the interest of comity between the executive and judicial branches, we suggest the following procedure. A judge who commences a contempt proceeding by court order and who appoints the State's Attorney to prosecute the charge should advise the State's Attorney if the judge wishes to have advance notice of the prosecutor's intent to dismiss the charge. If the State's Attorney concludes that the charge does not merit prosecution, the State's Attorney should return to the judge who initiated the charge and report his evaluation of the case and his intention to dismiss the charge. The judge then should have the opportunity to appoint a substitute prosecutor to replace the State's Attorney.
If the court appoints a substitute prosecutor, the State's Attorney should accede to the court's wishes and relinquish the case to the new prosecutor. (This outcome is no different than if the State's Attorneynolle prossed the case and the judge simply reinstated it and appointed a different prosecutor.) If the court does not appoint a substitute prosecutor, the State's Attorney may proceed to nolle pros the case. In this manner, the "elasticity" inherent in the constitutional separation of powers should permit the judge initiating the charge to have an opportunity to obtain a "second opinion" of the merits of the charge.
We note that, while the rules permit the appointment of public officials other than the State's Attorney to prosecute contempt charges, they do not provide for the appointment of an attorney outside of the Executive Branch.[12] Whether a court may appoint such an independent prosecutor under a theory of inherent judicial power[13] or under CJ § 2-102,[14] raises issues that are beyond the scope of the question that you posed.
Of course, we assume that a State's Attorney appointed by a court to prosecute a criminal contempt proceeding will take seriously the responsibility of vindicating the court's authority.[15] Presumably, prosecutors will not treat lightly a contempt proceeding initiated by a judge before whom they appear on a regular basis. See Young,481 U.S. at 801. ("In practice, courts can reasonably expect that the public prosecutor will accept the responsibility for prosecution.") Similarly, we are confident that a judge who commences a contempt case will normally defer to the considered judgment of an experienced prosecutor who has investigated and evaluated the merits of a criminal prosecution.
 IV Conclusion
For the reasons stated above, it is our opinion that a State's Attorney designated by a judge to prosecute a contempt proceeding retains the usual prosecutorial discretion to dismiss or enter anolle prosequi of a criminal charge without seeking special approval from the court. The court presiding over the contempt proceeding has the power to enforce constitutional and statutory limits on the exercise of that discretion. When the contempt proceeding has been initiated by the filing of a court order, the State's Attorney should advise the initiating judge of the intention to nolle pros the charge so that the court has an opportunity to appoint a substitute prosecutor.
J. Joseph Curran, Jr. Attorney General
Kimberly Smith Ward Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] In Young the Supreme Court discussed the contempt power in the context of its "supervisory power" over federal courts. Young,481 U.S. at 790. Nonetheless, much of that discussion concerns inherent judicial powers inherited by American courts from the English common law.
[2] The sentence cannot exceed six months imprisonment unless the defendant has a jury trial or waives his right to such a trial. SeeTaylor v. Hayes, 418 U.S. 488, 495 (1974); Wilkins v. State,293 Md. 335, 338-40, 444 A.2d 445 (1982).
[3] A proceeding to enforce a spousal or child support order may be initiated by a support enforcement agency. Rule 15-206(b)(3). The rules also contain other provisions specific to support enforcement actions.See Rule 15-207(e).
[4] At one time, the State's Attorney's prosecutorial powers derived from the common law, as well as statute. See Murphy v. Yates,276 Md. 475, 480-90 (1975). A 1976 amendment of the State Constitution restricted those powers to those defined by the General Assembly. Chapter 545, Laws of Maryland 1976. However, the Legislature has continued the broad powers that the State's Attorney possessed prior to the amendment. See Food Fair Stores v. Joy, 283 Md. 205, 213-14,389 A.2d 874 (1978); State v. Hunter, 10 Md. App. 300, 306-7 n. 5,270 A.2d 343 (1970), cert. improvidently granted and remanded, 263 U.S. 17
(1971).
[5] Of course, if jeopardy has not attached at the time of thenolle prosequi, a new charging document embodying the same charge could be filed, subject to any applicable period of limitations. SeeHooper, 293 Md. at 170-71; see also Ward v. State, 290 Md. 76,427 A.2d 1008 (1981).
[6] That provision reads:
 That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one said Departments shall assume or discharge the duties of any other.
Maryland Constitution, Declaration of Rights, Article 8.
[7] Judicial deference to prosecutorial discretion in this area is longstanding as illustrated by the following episode from the English courts:
 After he had ordered the imprisonment of a group of fanatics called "Prophets" for seditious language, Lord Holt was visited by Lacy, one of their friends, who informed a servant that he carried a message "from the Lord God." Lacy was admitted and told Lord Holt: "I come to you a prophet from the Lord God, who has sent me to thee, and would have thee grant a nolle prosequi for John Atkins, his servant, whom thou hast cast into prison." Lord Holt replied: "Thou art a false prophet, and a lying knave. If the Lord God had sent thee it would have been to the Attorney-General, for He knows that it belongeth not to the Chief Justice to grant a nolle prosequi; but I, as Chief Justice, can grant a warrant to commit thee to bear him company."
2 Campbell's Lives of the Chancellors 173quoted in People v. Sidener, 375 P.2d 641, 642 n. 4 (Cal.S.Ct. 1962).
[8] Indeed, the grand jury is sometimes referred to as an "appendage of the court." See Brown v. United States, 359 U.S. 41 (1959). Seegenerally 38A C.J.S. Grand Juries, §§ 3, 78.
[9] As the Supreme Court stated in an oft-quoted passage:
 [The prosecutor] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape nor innocence suffer.
Berger v. United States, 295 U.S. 78, 88 (1935).
[10] The rules and the cases encourage, and in some cases require, that a judge who initiates a constructive criminal contempt proceeding should refer the matter to a different judge for trial. See, e.g., Maryland Rule 15-207(b) (judge who enters constructive criminal contempt order ordinarily disqualified from presiding if expected to be a witness); Fed.R.Crim.P. 42 (judge generally disqualified from presiding at contempt proceeding concerning disrespect or criticism of that judge). State v. Roll, 267 Md. 714, 733, 298 A.2d 867 (1973) (usually "wise" to ask a fellow judge to preside over contempt proceeding if conduct involved personal attack on judge). Thomas v.State, 21 Md. App. 572, 320 A.2d 538, cert. denied, 272 Md. 749
(1974).
[11] One federal case suggests that an initiating judge who is not presiding over the case would have no further role in the prosecution. In United States v. McKenzie, 735 F.2d 907 (5th Cir. 1984), a district judge initiated criminal contempt proceedings against CBS, Inc., for failing to provide the court with a script of "60 Minutes" segment in advance of the broadcast. After the Justice Department declined to prosecute the contempt charge the district judge appointed private prosecutors and recused himself. The new judge dismissed the contempt charges. The Fifth Circuit rejected an appeal by the private prosecutors on the ground that those prosecutors no longer represented the district court because the new judge "became the district court" and, by dismissing the proceeding, indicated that it did not wish the contempt proceeding to be pursued. Id. at 911-12.
[12] Former Rule P4(d)(1), a predecessor of the current contempt rules, authorized the court to appoint either the State's Attorney "or any other member of the bar" to prosecute a constructive contempt charge. When the contempt rules were revised and recodified in 1996, separate rules were created for civil and criminal constructive contempt and the option of a prosecution by private counsel was dropped from the criminal rule. See Draft Minutes of the Court of Appeals Standing Committee on Rules of Practice and Procedure at pp. 92-93 (September 8, 1995). The predecessor statute provided only for prosecution by the State's Attorney. See former Article 26, § 5 (1962).
[13] Language in some federal court decisions suggests that the courts may have such power. See Young, 481 U.S. at 795-96 quoting Gompers v.Bucks Stove Range Co., 221 U.S. 418, 450 (1911). As best we can determine, the Court of Appeals of Maryland has not indicated whether the inherent power of circuit courts would encompass such powers. As the Office of the Attorney General is itself part of the Executive Branch of State government, we are loathe to define the inherent powers of a co-equal branch of government when there is as yet no guidance from that branch. Of course, the adoption of Rule 15-205 by the Court of Appeals may also be construed to limit any such power.
[14] CJ § 2-102 reads:
 If advisable in a specific proceeding, a court may appoint an . . . assistant counsel for the State . . . or other officer, and may require his presence in court.
To our knowledge, there are no cases that decide whether a court could appoint an attorney under this provision to prosecute a contempt action.Babbitt v. State, 294 Md. 134, 448 A.2d 930 (1982) (court may not appoint assistant counsel to initiate prosecution); Goldberg v.State, 69 Md. App. 702, 713-18, 519 A.2d 779 (1987), aff'd on othergrounds, 315 Md. 653, 556 A.2d 267 (1989) (court-appointed assistant counsel for State operates independently of State's Attorney).
[15] We do not address a situation in which a prosecutor dismisses a court-initiated contempt action in bad faith or for some improper or illegal purpose.
 *Page 91