642 A.2d 259

James O. JOHNSON

v.

STATE of Maryland.

No. 1255, Sept. Term, 1993.

Court of Special Appeals of Maryland.

June 6, 1994.

554

Shannon E. Avery, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Tarra DeShields–Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Stuart O. Simms, State's Atty., for Baltimore City, on the brief), Baltimore, for appellee.

Argued before MOYLAN, GARRITY and BLOOM, JJ.

GARRITY, Judge.

We are asked in this case to explicate the trial judge's role in entering judgments for direct criminal contempts.

The law recognizes two types of contempts, direct contempt and constructive contempt. The Maryland Rules of Procedure define each. "A 'direct contempt' means a contempt committed in the presence of the court, or so near to the court as to interrupt its proceedings." Md.Rule P1. a. "A 'constructive contempt' means a contempt which was not committed in the presence of the court, or so near to the court as to interrupt its proceedings." Md.Rule P1. b. Contempts may be further classified as civil or criminal. A civil contempt serves a remedial purpose, while a criminal contempt serves a punitive purpose. *Kelly v. Montebello Park Co.*, 141 Md. 194, 118, 118 A. 600 (1922). When a judge intends to enter a

judgment for a direct contempt, he must comply with Md. Rule P3. b., which provides:

Where a direct contempt is committed, the court shall sign a written order to that effect. The order shall recite the facts, be signed by the judge and entered on record. The order shall state which of the facts were known to the court of its own knowledge and as to any facts not so known, the basis for the court's finding with respect thereto.

 The rule requires the trial judge to perform five tasks:

1. prepare a written order;
2. recite the facts relied upon;
3. set forth the source of his knowledge of the facts (whether through personal observation or information learned from others);
4. enter the order in the record; and
5. sign the order.

The law does not require a separate hearing or the presentation of formal evidence. *Bloom v. Illinois,* 391 U.S. 194, 204, 88 S.Ct. 1477, 1483, 20 L.Ed.2d 522 (1968). The right of allocution is not absolutely required but generally should be afforded. *Mitchell v. State,* 320 Md. 756, 768, 580 A.2d 196 (1990), and *Thomas v. State,* 99 Md.App. 47, 635 A.2d 71 (1994).

In the *Thomas* case, we explained what a trial judge must do to enter a valid judgment for a direct criminal contempt. We noted that where the act of contempt is committed in the courtroom and recorded by the court reporter, the typed transcript can satisfy requirements 1, 2 and 4. Also, if the basis for the contempt is clearly and unequivocally shown, the transcript will also satisfy requirement 3. We went on to rule that, if the transcript satisfies the first four requirements but there is no signed order, we must vacate the judgment but may remand for further proceedings. On the other hand, where the only explanation for the judgment is in the transcript, but the transcript shows that the factual basis for the finding of contempt is ambiguous and there is no signed order,

we must vacate the judgment and not permit further proceedings.

In the instant case, the appellant appeared before the trial judge on a charge of violation of probation. The appellant, who originally had been convicted on June 6, 1990 of having committed malicious destruction of personal property and given a suspended sentence of three years, committed burglary while on probation and was sentenced to ten years incarceration on July 16, 1991. At the time of the violation hearing, on July 8, 1993, the appellant had been incarcerated for approximately two years. The delay was due to the inability of probation authorities to locate appellant's records.

The appellant's defense at the hearing was that, as he had served all but ten days of the suspended sentence, he had been advised by his probation agent that a petition for its violation would not be brought against him. A violation proceeding was nevertheless instituted against the appellant, who was found guilty of violating his probation and sentenced to serve out the three year suspension, consecutive to the ten years currently being served. Thereafter, the following colloquy ensued:

THE COURT: Call the next case please.

[PROSECUTOR]: State calls Eugene Wright 591182012. Laura Shach for the State.

MR. JOHNSON: —at the same time. Don't make no mother fucking sense.

THE COURT: Bring him back. Take him back.

MR. JOHNSON: No mother fucking sense.

THE COURT: Pull him back.

MR. JOHNSON: Yo, man, stop yanking on my mother fucking arms. Mother fucking—

THE COURT: Sit him back over there in front of the table.

THE CLERK: Give me the file back. He might be under contempt of court.

THE COURT: Now, stand up there. Come back to that table there. Step on up now. What's wrong with you?

MR. JOHNSON: What the fuck you think wrong with me, man? Goddamn, I'm trying to tell you I ain't have no mother fucking option in this shit, man.

THE COURT: All right—

MR. JOHNSON: What the fuck? You think everybody just want to go sit in prison for the rest of their life because you ain't got nothing better to do than to sit up there and crack jokes. This ain't no mother fucking joke, man. This is about my goddamn life.

THE COURT: That cost you five months and twenty-nine days in addition to the three years I've just given you. [# 1]

MR. JOHNSON: Fuck this shit, man.

THE COURT: All right. That's five months and twenty-nine more in addition to the five months and twenty-nine I've given you. [# 2]

MR. JOHNSON: Fuck you, bitch.

THE COURT: That make ten months plus the ten, twenty-nine days. That's twelve months. That's a year. Call me that again and I'll give you another one.

MR. JOHNSON: Fuck you, bitch.

THE COURT: That's five months and twenty-nine days. That's three years. That's five months and twenty-nine days. Now, wait a minute. That's consecutive to the three years that you're now doing. Each one of those. Separate and independent. [# 3]

MR. JOHNSON: If I had a gun, your mother fucking head would be splattered all over the back of the goddamn wall for—

THE COURT: And you'd better shoot straight when you try. When you get out come on. Five months and twenty-nine more for that. That's consecutive to the three others and consecutive to the one that you're now doing. [# 4]

MR. JOHNSON: Whatever man. You're tired of giving it out? Did you finish or what?

THE COURT: Well, we can see. That's five months and twenty-nine more. [# 5]

MR. JOHNSON: Kiss my ass again.

THE COURT: Five months and twenty-nine more. [# 6]

MR. JOHNSON: Kiss my ass again until you're tired of giving me another.

THE COURT: That's six of them.

MR. JOHNSON: Kiss my ass again.

THE COURT: Seven. Five months and twenty-nine days. [# 7]

MR. JOHNSON: Fuck you. Kiss my ass again.

THE COURT: Five months and twenty-nine days. [# 8]

MR. JOHNSON: All right.

THE COURT: Consecutive.

THE CLERK: Silence.

MR. JOHNSON: So, you finished giving out time?

THE COURT: I guess. Until you cuss again.

MR. JOHNSON: Suck my dick.

THE COURT: Five months and twenty-nine days consecutive. [# 9]

THE BAILIFF: Quiet in the Court.

MR. JOHNSON: You finished?

THE COURT: I suppose.

MR. JOHNSON: Well, what the fuck are you holding me for then?

THE COURT: Five months and twenty-nine more days. Consecutive. [# 10]

MR. JOHNSON: Get the fuck off me, man.

THE COURT: Call the next one.

MS. SHACH: State calls the matter of Eugene Wright—

THE COURT: Record should show that—

MS. SHACH: 591182012.

THE COURT: —if I'd have had a shotgun I need to have shot him but I don't have it today. Call the next case.

■ By the time the colloquy had ended, the appellant had been sentenced for ten acts of obviously contemptuous conduct without formally having been found to be in contempt. Indeed, the only mention of the word "contempt" was voiced by the court clerk. In addition, as in *Thomas*, the trial judge failed to sign an order of contempt. The transcript, however, satisfies the other four requirements of Md.Rule P3. b. Therefore, by reason of our holding in *Thomas v. State, supra*, we shall vacate the judgments and remand for further proceedings.

This is not the end to our consideration of this matter because this case presents a question that did not arise in the *Thomas* case. The novel question presented in this matter is whether a trial judge may order multiple contempt convictions where the contempts occur in such a situation as was presented here.

■ Where there is a question as to multiple *sentences*, the law is clear. The United States Supreme Court has ruled that due process prohibits a trial judge from imposing a sentence of six months or greater unless the defendant is afforded the right to a jury trial. When a trial judge finds a defendant guilty of separate contempt convictions and upon each finding imposes a sentence of less than six months, there is no limit to the total sentence that may be given. But, if a trial judge delays entering his conviction for a contempt until the end of the trial, and then tries and convicts a defendant of several contempts at one time, he may not impose a cumulative sentence of greater than six months. *Codispoti v. Pennsylvania*, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974), and *Wilkins v. State*, 293 Md. 335, 444 A.2d 445 (1982).

In the case *sub judice*, the trial judge entered a separate sentence for each venomous retort hurled at him. The multiple sentences did not, therefore, run afoul of the law set forth in *Codispoti v. Pennsylvania, supra*.

We are not, however, concerned solely with the sentences imposed. There is a larger question. That question is whether *multiple convictions* were warranted. Stated another way, should the trial judge have treated the appellant's outbursts as a single incident rather than a series of incidents?

■ The authority to convict for a direct criminal contempt is a very special power. This authority is granted judges because it is essential they have it to insure that the judiciary can function independently. *Michaelson v. United States, ex rel Chicago, St. P., M., & O.R. Co.*, 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162 (1924). As far back in time as 1821, the United States Supreme Court, in discussing the authority of a court to punish for contempt, observed that courts by their creation are vested with the power "to impose silence, respect and decorum in their presence." *Anderson v. Dunn*, 19 U.S. 204, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821).

■ In other words, the purpose of the contempt power is to provide a means for a judge to uphold the dignity of the judicial process. This dignity is upheld in two related but distinct ways. First, by imposing punishment a judge makes a statement that what was done was improper and discourages others from engaging in similar acts. Second, the act of imposing punishment serves the purpose of maintaining control of the proceedings in the person of the judge. It is vitally essential, however, if a trial judge is to maintain proper control of the judicial process, that he or she act in a manner appropriate with his or her station. This means, among other things, that in rendering a contempt verdict a judge may not act "in anger, or as an immediate emotionally reflective response." *Betz v. State*, 99 Md.App. 60, 68, 635 A.2d 77 (1994). While it is an uncommon but unfortunate reality that an individual may act emotionally irresponsible in court, a trial judge may not respond to such behavior in kind.

Indeed, when imposing a sentence, a sentencing judge must be sensitive to the fact that a sentence of incarceration is a ruling that may visit a most dramatic impact upon the emotions of a person who has just been deprived of his or her

freedom. In a situation such as in the case at bar, if a person believes the sentence to be unfair, it is quite possible that a flash of displeasure could be communicated in a manner that is contemptuous. While such an outburst cannot be condoned, a judge needs to be sensitive to the reality that the language of the street is not the language of the courtroom. Every situation is different, and it is not possible or practical for this Court to dictate what trial judges should do when direct contempts are committed in their courtrooms. Nevertheless, trial judges are required to act reasonably and with decorum.

In the matter before us, it appears that no attempt was made to defuse the situation. Although the case was over, defense counsel surely was still either in the courtroom or nearby. The trial judge could have at least invited counsel to discuss the matter with the appellant. Alternatively, the trial judge could have tried to re-explain the reasons for the sentence he ordered executed. If those actions failed or were not practical, he could have declared a recess to allow time for tempers to abate. The trial judge made no effort to explain the concept of contempt or to advise the appellant of the seriousness of the charge. Lastly, and most distressing of all, it appears that in the face of the defendant's inappropriate, rude, and improper taunts, the trial judge understandably but unfortunately lost his temper and his judicial demeanor.

We have no difficulty with a trial judge, where the circumstances warrant it, finding a defendant guilty of multiple counts of contempt. Nevertheless, a judge must act reasonably in finding a defendant guilty of contempt. A judge does not act reasonably, however, when in anger he engages a defendant in a dialogue that may provoke the defendant into further acts of contemptuous behavior.

In the instant case, the trial judge, by engaging in a prolonged dialogue with the appellant, may have provoked the appellant into repeatedly committing acts of contempt. Convictions for those acts may not stand. It is too late in the sequence of events that transpired for this Court to adjudicate which of the appellant's contempts were solely his own doing

and which were influenced by the trial judge. Therefore, to insure that justice is done, we direct that upon remand the trial judge consider the entire post trial incident to constitute only one episode of contempt. We leave to his judgment what further action should be taken.

**JUDGMENTS VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**