855 A.2d 339

**Patrick Darnell SMITH**

v.

**STATE of Maryland.**

**No. 134, Sept. Term, 2003.**

Court of Appeals of Maryland.

July 29, 2004.

Sherrie B. Glaser, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), for petitioner.

Celia Anderson, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, J.

Petitioner, Patrick Darnell Smith, was convicted in the Circuit Court for Wicomico County of multiple drug-related offenses.  In addition, for conduct occurring in the course of a hearing on Smith's motion for a new trial, the trial judge found him in direct criminal contempt of court on three occasions.  The initial two instances of verbal misconduct resulting in contempt findings were separated by several minutes of relatively ordinary courtroom dialogue.  The third episode resulting in a contempt finding came at the end of the hearing when Smith launched into a string of expletives against the judge after denial of the motion for a new trial.  In an unreported opinion, the Court of Special Appeals upheld all of the convictions.

We granted Smith's petition for a writ of certiorari, 380 Md. 230, 844 A.2d 427 (2004), so that we might consider the following question:

Did the Court of Special Appeals err in affirming three convictions for contempt which arose out of a single emotional outburst of the Petitioner?

We hold that Petitioner's three acts of recognized contempt were separate and discrete incidents supporting the three convictions.  Consequently, we affirm the judgments.

I.

On 7 March 2002, Petitioner was convicted in the Circuit Court of six drug-related offenses, for which he received sentences totaling twenty-one years of imprisonment.  On 30 May 2002, after discharging his trial counsel, Petitioner represented himself at a hearing on his motion for a new trial.  During this hearing, Petitioner employed profanity at certain times in addressing the court.  The judge found Petitioner in contempt on three such occasions, sentencing him to five months imprisonment on each count, to be served consecutive-

ly. Not all of Petitioner's use of profanity, however, was recognized by the court as contemptuous.

Petitioner's first use of profanity in the proceeding occurred when he used the word "fuck," apparently for emphasis, in recalling an earlier conversation with his trial counsel who allegedly invited Petitioner to pursue a post-conviction petition based on ineffective assistance of counsel at trial. Although not holding Petitioner in contempt for this utterance, the judge promptly warned Petitioner that further use of "that language" would result in a contempt finding. Several minutes later (or the equivalent of nine pages of transcript), Petitioner again employed the word "fuck" in addressing the court. For this, he summarily was found in contempt. The proceeding continued for a few minutes more (spanning approximately six pages of transcript), addressing Petitioner's assertion that he earlier requested the court to issue certain witness subpoenas for the hearing, before Petitioner again uttered "fuck" and was found in contempt a second time. In response to his apparent predicament at this point, Petitioner blurted the expletive "shit." The judge ignored this remark.

Thereafter, Petitioner testified on his own behalf, the State adduced some documentary evidence, and Petitioner and the State's Attorney argued, without further incident, the motion for a new trial over the ensuing thirty-seven pages of transcript. Then, as the court began to explain its ruling on the new trial motion and the outcome became predictable, Petitioner interrupted, declaring, "That's bullshit. That's bullshit." The judge ignored this outburst and continued with his oral ruling. About a page of transcript later, as the judge explained why he found merit in Petitioner's trial attorney's reasons for not calling certain witnesses at trial, Petitioner openly pondered, "Ain't that a bitch?" The judge chose to ignore Petitioner's conduct on this occasion as well.

■ After concluding the explanation of his reasons for denying the motion for a new trial, the judge turned to the matter of sentencing for the two counts of contempt found to have occurred earlier during the hearing. The judge asked

Petitioner if he wished to be heard as to that sentencing.[1] The following colloquy ensued:

THE DEFENDANT: What is the maximum on contempt, sir?

THE COURT: What is the maximum on contempt?

If I am going to give you in excess of six months, I believe I have to give you a jury trial, is that correct ... ?

[STATE'S ATTORNEY]: Yes.

THE COURT: Mr. Smith, I am not going to give you in excess of six months.

THE DEFENDANT: Let me tell you something.

THE COURT: What?

THE DEFENDANT: You say you won't give me in excess of six months.

THE COURT: Yes.

THE DEFENDANT: You know what? You have been sitting up there in the trial in every hearing I have had for this far, right?

From day one, you have been very prejudiced to the defense. I asked you, right, a while ago, you tried to skip out on even bringing forth an allegation. You say it is only a bald allegation. I am not asking you to believe me. I am asking you to bring forth the witnesses in this case who could testify—

THE COURT: I asked you if you had anything you want to say as to what sentence the Court should impose—

THE DEFENDANT: Yeah. You know what? You can give me six more months, motherfucker, for sucking my dick, you punk ass bitch. You should have a white robe on, motherfucker, instead of a black.

Fuck you.

THE COURT: I find you in contempt again.

---

1. A defendant found to have committed direct criminal contempt ordinarily should be given the opportunity to allocute, especially when, as Petitioner claims, the inappropriate conduct was "essentially reflexive." *See Mitchell v. State,* 320 Md. 756, 768, 580 A.2d 196, 202 (1990).

THE DEFENDANT: Fuck you in contempt again.

THE COURT: I find you three times in contempt— [2]

THE DEFENDANT: Fuck you.

And fuck.

THE COURT: On each charge, the Court will impose a sentence of five months to run consecutive to each other and consecutive to any sentence you are now serving or obligated to serve.

THE DEFENDANT: Yeah. You better leave now, you, Ku Klux Klan.

THE COURT: The Court will adjourn.

THE DEFENDANT: Fuck you, fuck you, fuck you, fuck you, fuck you, fuck you, and fuck you, you, Ku Klux Klan—

(Whereupon, the Proceedings were concluded.)

---

2. We must clarify an apparent ambiguity pervading this case since the time Petitioner's appeal was briefed and argued in the intermediate appellate court. The trial judge did not find Petitioner in contempt twice for the final tirade. When the judge said, "I find you three times in contempt—," he was not responding to Petitioner's, "Fuck you in contempt again." Rather, the judge was interrupted while summarizing that he had found Petitioner in contempt for a total of three times (twice for the previous uses of "fuck" and now a third for the closing tirade up to that point) and was to be sentenced to five months imprisonment on each count. A careful reading of the record compels this interpretation, one supported also by the trial judge's Memorandum and Order of Contempt filed on 5 June 2002. In his Memorandum and Order, the trial judge explained:

> At an early stage in the hearing, the Defendant was warned that if he continued to use the word "fuck," he would be held in contempt. Despite these warnings, Defendant continued his use of such language on two occasions in direct violation of the Court's directive, thus interrupting the order of the Court and interfering with the dignified conduct of the Court's business. The Defendant was found in direct contempt on each occasion with the imposition of sanctions deferred until the conclusion of the hearing.
> When given his right of allocution before sentencing, the Defendant stated:
> "Yeah, you know what? You can give me six more months, motherfucker, for sucking my dick, you punk ass bitch. You should have a white robe on, motherfucker, instead of black. Fuck you."
> The Defendant was found in direct criminal contempt a third time for that outburst.

Petitioner subsequently appealed his three contempt convictions, among other issues, to the Court of Special Appeals. Before that court, as before us, Petitioner argued that his profanity was provoked by the trial judge. In affirming the convictions, the intermediate appellate court concluded:

[T]he trial court was carefully and methodically attempting to move through a motions hearing.... The record reveals that the trial court indulged Smith at nearly every turn and continually attempted to re-direct him to the subject....
[T]he trial court did nothing to provoke Smith; to the contrary, the court's patience is apparent, even from the printed page.

At oral argument before this Court, Petitioner attempted further to ameliorate his behavior by stating "pro se defendants can be very trying" and urging that it naturally could be anticipated that frustration on his part would be communicated through the use of street vernacular. Petitioner does not argue that his behavior was not contemptuous; rather, he contends his conduct should be viewed collectively as a single emotional outburst, constituting but a single act of contempt. We agree, however, with the analysis and result of the Court of Special Appeals.

## II.

"The contempt power has stood as a sentry at the citadel of justice for a very long time...." *State v. Roll and Scholl,* 267 Md. 714, 717, 298 A.2d 867, 870 (1973). Without this power, the courts would be subject to the whim of any person who seeks to disrupt their proceedings. Consequently, it is beyond cavil that the power to hold a person in contempt is inherent in all courts as a principal tool to protect the orderly administration of justice and the dignity of that branch of government that adjudicates the rights and interests of the people. *See Ex Parte Maulsby,* 13 Md. 625, 635 (1859). It is reposed in the first instance in the trial judge's sound discretion whether to hold an individual in contempt, and his or her decision generally will not be overturned on appellate review

absent an abuse of that discretion or a clearly erroneous dependent finding of fact. *See Roll and Scholl,* 267 Md. at 717, 298 A.2d at 870 (stating further that exercise of the contempt power, "demands care and discretion in its use...."); *Droney v. Droney,* 102 Md.App. 672, 683–84, 651 A.2d 415, 420–21 (1995) (citing *Baltimore v. Baltimore,* 89 Md.App. 250, 254, 597 A.2d 1058, 1060 (1991)).

■■■ In Maryland, the contempt power is defined by the common law and the rules of procedure established by this Court. *See* Md.Code (1974, 2002 Repl.Vol.), § 1–202 of the Courts and Judicial Proceedings Article. We recognize two forms of contempt—direct and constructive—and two types of each form—criminal and civil. Direct contempt is committed in the presence of the trial judge or so near to him or her as to interrupt the court's proceedings, while constructive contempt is any other form of contempt. *See* Md. Rule 15–202; *see also Mitchell,* 320 Md. at 763, 580 A.2d at 199 ("In order to constitute a direct contempt, it is not necessary that the conduct bring a halt to the proceedings in progress. It takes but a moment of time to hurl a vile epithet at a judge or jury, but such conduct in a courtroom will not be tolerated, and may properly be addressed summarily."). Criminal contempt serves a punitive function, while civil contempt is remedial or compulsory and must provide for purging. *See, e.g., Roll and Scholl,* 267 Md. at 728, 298 A.2d at 876.

■■■ The purpose of a summary conviction for direct criminal contempt is to punish immediately the contemnor for his or her behavior and vindicate the authority and dignity of the court, serving both as a specific and general deterrent. *See Ashford v. State,* 358 Md. 552, 563, 750 A.2d 35, 40 (2000) (citing *Lynch v. Lynch,* 342 Md. 509, 520, 677 A.2d 584, 589–90 (1996); *Ex Parte Bowles,* 164 Md. 318, 330, 165 A. 169, 174 (1933)); *Roll and Scholl,* 267 Md. at 727, 298 A.2d at 875. It is rare that, once exercised, the power of contempt fails to serve the purpose for which it evolved. The present case reaches us because it is unfortunately one such rare occurrence.

 

## III.

■ Petitioner contends that his contemptuous utterances should be considered as a single emotional outburst deserving of only one contempt conviction. In reliance on *Johnson v. State,* 100 Md.App. 553, 642 A.2d 259 (1994), Petitioner also asserts that his behavior was "subject to the influence of the trial judge." In *Johnson,* the trial court, during the proceeding on the merits, found the defendant had violated his parole. As the defendant Johnson was leaving the courtroom, he muttered, "Don't make no mother fucking sense." *Id.* at 557, 642 A.2d at 261. The judge directed that he be brought back to counsel table and summarily convicted him of contempt. *Id.* at 558, 642 A.2d at 261. The defendant responded to that with more profanities, and the judge found him in contempt a second time. *Id.* There ensued an extended back-and-forth colloquy[3] that ended with Johnson amassing ten convictions

---

**3.** The colloquy in *Johnson* is reproduced here because it is apparent at once to be of a different nature than in Petitioner's case:

THE COURT: Call the next case please.
[PROSECUTOR]: State calls Eugene Wright 591182012. Laura Shach for the State.
MR. JOHNSON:—at the same time. Don't make no mother fucking sense.
THE COURT: Bring him back. Take him back.
MR. JOHNSON: No mother fucking sense.
THE COURT: Pull him back.
MR. JOHNSON: Yo, man, stop yanking on my mother fucking arms. Mother fucking—
THE COURT: Sit him back over there in front of the table.
THE CLERK: Give me the file back. He might be under contempt of court.
THE COURT: Now, stand there. Come back to that table there. Step on up now. What's wrong with you?
MR. JOHNSON: What the fuck you think wrong with me, man? Goddamn, I'm trying to tell you I ain't have no mother fucking option in this shit, man.
THE COURT: All right—
MR. JOHNSON: What the fuck? You think everybody just want to go sit in prison for the rest of their life because you ain't got nothing better to do than sit up there and crack jokes. This ain't no mother fucking joke, man. This is about my goddamn life.
THE COURT: That cost you five months and twenty-nine days in addition to the three years I've just given you. [# 1]
MR. JOHNSON: Fuck this shit, man.

for contempt and, at the rate of five months and twenty-nine

THE COURT: All right. That's five months and twenty-nine more in addition to the five months and twenty-nine I've given you. [# 2]

MR. JOHNSON: Fuck you, bitch.

THE COURT: That make ten months plus the ten, twenty-nine days. That's twelve months. That's a year. Call me that again and I'll give you another.

MR. JOHNSON: Fuck you, bitch.

THE COURT: That's five months and twenty-nine days. That's three years. That's five months and twenty-nine days. Now, wait a minute. That's consecutive to the three years that you're now doing. Each one of those. Separate and independent. [# 3]

MR. JOHNSON: If I had a gun, your mother fucking head would be splattered all over the back of the goddamn wall for—

THE COURT: And you'd better shoot straight when you try. When you get out come on. Five months and twenty-nine more for that. That's consecutive to the one that you're now doing. [# 4]

MR. JOHNSON: Whatever man. You're tired of giving it out? Did you finish or what?

THE COURT: Well, we can see. That's five months and twenty-nine more. [# 5]

MR. JOHNSON: Kiss my ass again.

THE COURT: Five months and twenty-nine more. [# 6]

MR. JOHNSON: Kiss my ass again until you're tired of giving me another.

THE COURT: That's six of them.

MR. JOHNSON: Kiss my ass again.

THE COURT: Seven. Five months and twenty-nine days. [# 7]

MR. JOHNSON: Fuck you. Kiss my ass again.

THE COURT: Five months and twenty-nine days. [# 8]

MR. JOHNSON: All right.

THE COURT: Consecutive.

THE CLERK: Silence.

MR. JOHNSON: So, you finished giving out time?

THE COURT: I guess. Until you cuss again.

MR. JOHNSON: Suck my dick.

THE COURT: Five months and twenty-nine days consecutive. [# 9]

THE BAILIFF: Quiet in the Court.

MR. JOHNSON: You finished?

THE COURT: I suppose.

MR. JOHNSON: Well, what the fuck are you holding me for then?

THE COURT: Five months and twenty-nine more days. Consecutive. [# 10]

MR. JOHNSON: Get the fuck off me, man.

THE COURT: Call the next one.

MS. SHACH: State calls the matter of Eugene Wright—

THE COURT: Record should show that—

MS. SHACH: 591182012.

THE COURT:—if I'd have a shotgun I need to have shot him but I don't have it today. Call the next case.

*Johnson*, 100 Md.App. at 557–60, 642 A.2d at 261–62 (alterations in original).

days per conviction (to be served consecutively), a total of an additional five years imprisonment. *Id.* at 558–60, 642 A.2d at 261–62. On these facts, the Court of Special Appeals had no trouble concluding that the trial judge lost "his temper and his judicial demeanor" and provoked the defendant into his repeated acts of contempt. *Id.* at 562, 642 A.2d at 264. Because the court could not determine which contemptuous acts resulted from the judge's provocation, the court vacated the ten contempt convictions and directed the trial judge on remand to consider the entire incident as one episode of contempt. *Id.* at 563, 642 A.2d at 264.

Petitioner's attempted analogy of what occurred in his case to that occurring in *Johnson* is a misfire. First, Petitioner's contempt convictions did not result from an extended, uninterrupted colloquy with the court; rather, they resulted from distinct acts, separated in time and focus by at least several minutes of unremarkable, normal discussion or exchanges arguably relevant to the purpose of the proceeding—Petitioner's discharge of trial counsel and the merits of his motion for a new trial. Second, unlike in *Johnson*, the judge in the present case, after warning Petitioner, after the "first bite," of the consequences of repeated conduct of the same type, did not provoke Petitioner into further acts of contempt; instead, after each finding of contempt, the judge immediately steered from the digression back to the on-going purpose of the proceeding. Third, Petitioner was extended great tolerance and leniency by the court regarding his verbal behavior overall: on three other occasions the judge overlooked what otherwise might have been additional contempt-worthy utterances. Lastly, it appears that when he wanted to, and when it suited his purpose, Petitioner was capable of addressing the court in a relatively normal and conversational manner.

## IV.

### A.

Next, we address the argument that it should be error for a judge to find an individual in contempt multiple

times during the same, continuous proceeding. Petitioner suggests, when such circumstances threaten, that we require a judge to call a recess after finding an individual in contempt the first time before the judge thereafter may find that person in contempt for a subsequent offense of contempt. The federal and state courts, including Maryland's, however, permit a judge to convict summarily an individual for contempt multiple times during the course of a single proceeding.[4] We refuse to adopt the rule sought by Petitioner, which unreason-

---

4. A plurality of the U.S. Supreme Court found that if a trial judge holds a defendant in contempt and sentences him to six months imprisonment, such action does not prevent the judge from summarily convicting the defendant of contempt for subsequent misconduct in the same proceeding, even though the sentences, if served consecutively, would exceed six months. *Codispoti v. Pennsylvania*, 418 U.S. 506, 513–15, 94 S.Ct. 2687, 2692, 41 L.Ed.2d 912 (1974). The Court of Special Appeals opined in *Johnson*, the case on which Petitioner chiefly relies, "[w]e have no difficulty with a trial judge, where the circumstances warrant it, finding a defendant guilty of multiple counts of contempt." *Johnson*, 100 Md.App. at 562, 642 A.2d at 264. Upon reading the cases from other jurisdictions that Petitioner cites in his brief, we infer that the same rule is recognized in other states. When those courts faced the issue of multiple contempt convictions during a single proceeding, they did not adopt a broad rule prohibiting judges from holding a defendant in contempt multiple times; rather, in vacating the convictions (or ordering concurrent sentences), they focused on the fact that the behavior occurred during essentially a single outburst and thus did not constitute separate acts. *See Williams v. State*, 599 So.2d 255, 256 (Fla.Dist.Ct.App.1992) (concluding, "appellant's two statements of profanity, which were virtually identical and separated in time only long enough for the trial court to find appellant in contempt, are properly viewed as a single instance of contempt."); *State v. Bullock*, 576 So.2d 453, 458 (La.1991) (allowing the defendant's multiple convictions to stand, but ordering concurrent sentences given that the contemptuous behavior was part of a single episode); *State v. Lingwall*, 637 N.W.2d 311, 314–15 (Minn.Ct.App.2001) (holding that Minnesota's double jeopardy statute prevented multiple punishments in the case because "there was not a sufficient break in Lingwall's conduct to make it separate behavioral incidents."); *see also Butler v. Florida*, 330 So.2d 244, 245 (Fla.Dist.Ct.App.1976) (concluding that because the six epithets used during an outburst were not individual acts, appellant was guilty of but a single contempt); *Commonwealth v. Williams*, 753 A.2d 856, 864 (Pa.Super.Ct.2000) (reasoning that in order for a court to impose multiple sentences, an individual's conduct must constitute separate contemptuous acts). We deduce, therefore, that had the defendant's behavior in each of those cases been separate acts, the respective state courts would have upheld multiple convictions for contempt.

ably would tie the hands of trial judges in maintaining order in their courtrooms. As discussed in Part II of this opinion, the purpose of the contempt power is to allow a judge to maintain the dignity and orderly operation of the court. We reiterate that as long as contempt convictions in a given case serve that purpose, it is not error necessarily for a judge to find the same individual multiple times in contempt during the course of a single, continuous proceeding.

Thus, the judge in the present case did not err in not calling a recess upon finding Petitioner in contempt for saying "fuck" the first time in the hearing. After Petitioner was found in contempt the first time, the focus of discussion immediately returned to the consideration of matters related to Petitioner's case. The proceeding continued for several minutes more before Petitioner was found in contempt for the second time.[5] Thereafter, for the next forty pages of transcript, the proceedings continued relatively normally before Petitioner's final tirade. Given the somewhat curative effect that the first two contempt convictions had on Petitioner's behavior, we conclude that the judge properly exercised his discretion in those instances.

## B.

Should a judge determine, however, that finding an individual in contempt fails to curtail the disruption to the proceeding, we agree alternative remedies should be considered. In the case of a contemptuous defendant who remains unresponsive to the contempt finding(s), the judge may elect to call a recess to allow time for the defendant's temper to cool and better judgment to be restored. A judge also has the power, in extreme circumstances, to remove a defendant from

---

**5.** Even were we to require, as a matter of rote procedure, a recess following an initial contempt finding, no constructive purpose would have been served to do so in the present case because it appeared Petitioner was able to return to the business at hand after the first contempt was found. Moreover, he appeared to act similarly following the second contempt finding.

the courtroom and to proceed in his or her absence.[6] The possible alternative actions explored here are not exhaustive. The appropriateness and lawfulness of any action taken in a given case will depend naturally on the facts of each case.

For example, in the present case, even after Petitioner was found in contempt midway through his final tirade, he persisted in hurling invectives at the court. Had the judge simply continued to find Petitioner in contempt for each discrete profane element of this tirade, such action would have been unreasonable and, therefore, an abuse of discretion, much like as was found in *Johnson*. This would be in accord with the holdings of the U.S. Court of Appeals for the Fourth Circuit and the majority of other states that have considered the same or similar situation. *See United States v. Murphy*, 326 F.3d 501 (4th Cir.2003) (determining the rule of lenity in interpreting Congress' unit of prosecution for contempt dictated that the defendant's brief outburst constitute only one act of contempt); cases cited *supra* note 4. *But see Jackson v. Bailey*, 221 Conn. 498, 605 A.2d 1350, 1357 (1992) (stating that using temporal proximity to compress three contempts into one produces an unreasonable result). On this record, however, the judge acted properly and reasonably by finding Petitioner

---

6. A defendant's Sixth and Fourteenth Amendment right to be present at his or her trial, though fundamental, is not absolute. " '[T]he privilege [of personally confronting witnesses] may be lost by consent or at times even by misconduct.' " *Illinois v. Allen*, 397 U.S. 337, 342–43, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970) (alterations in original) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)). The Court in *Allen* was called upon to determine the constitutionality of the trial judge's two orders to have the defendant removed from the courtroom, after having first issued a warning, when he threatened the judge, hurled abusive remarks, and severely disrupted the proceedings. *Id.* at 339–41, 90 S.Ct at 1059. In upholding the constitutionality of the trial judge's actions, the Court outlined three requirements for removing a defendant from the courtroom: (1) the defendant must first be warned that he or she will be removed if his or her disruptive behavior continues; (2) his or her behavior must be so disruptive or disrespectful that his or her trial cannot proceed with him in the courtroom; and (3) he or she must be allowed to return as soon as he or she is willing to conduct him—or herself appropriately. *Id.* at 343, 90 S.Ct. at 1060–61.

in contempt only once for the initial onslaught of the final tirade and then quickly drawing the proceedings to a close.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.