2009 VT 40

## State of Vermont v. James R. North

[978 A.2d 435]

No. 07-250

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed May 1, 2009

*Thomas Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant appeals from the district court's order of contempt. He claims the district court abused its discretion by holding him thrice in contempt and imposing three consecutive sentences of five to six months, one for each contemptuous statement. We affirm in part and reverse in part.

¶ 2. The relevant facts are undisputed. On June 5, 2007, the Chittenden District Court imposed an effective sentence of three to twenty years for obtaining property by false pretenses or tokens in violation of 13 V.S.A. § 2002 and passing bad checks in violation of 13 V.S.A. § 2022. As defendant was being led from the courtroom, the following exchange occurred:

> DEFENDANT: Go fuck yourself, Your Honor.
>
> COURT: Bring him back here please. Bring him back here. I'm holding the Defendant in contempt of Court. He'll serve an additional five to six months for contempt of Court for cursing at the judge.
>
> DEFENDANT: Go fuck yourself —
>
> COURT: Okay. That's another five to six months for contempt of Court consecutive. Do you want to keep going, Mr. North?
>
> DEFENDANT: [unclear]
>
> COURT: Another five to six months. Fifteen to eighteen months consecutive, in addition to the three to twenty years.

¶ 3. On June 7, 2007, pursuant to its summary contempt authority under Vermont Rule of Criminal Procedure 42(a), the district court issued a signed order of contempt reciting the

preceding exchange, clarifying that in his third statement, defendant called a member of the court's family a vulgar, obscene name, and imposing 3 five-to-six-month sentences, one for each infraction, each consecutive to any other sentence imposed. This appeal followed.

¶ 4. Defendant concedes the propriety of the first contempt finding, but urges us to either overturn the second and third findings of contempt or amend the sentences to run concurrently. He argues that: (1) the court should have referred the second and third contempts to another judge for nonsummary procedures; (2) the court's invitation of his third statement rendered it noncontemptuous; and (3) any sentences imposed for the contempts should run concurrently to each other. We agree only with defendant's third argument.

██ ¶ 5. We review the district court's order of contempt for abuse of discretion. *In re Duckman*, 2006 VT 23, ¶ 7, 179 Vt. 467, 898 A.2d 734. As we explained recently in *Duckman*, "[t]rial courts have discretion to issue contempt orders, and reversal of a contempt judgment is appropriate only if the trial court's discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable." *Id.* (quotation omitted). However, we cautioned that "[w]e review the exercise of this discretion carefully in cases of summary contempt because in those proceedings the otherwise inconsistent functions of prosecutor, jury and judge are united in one individual." *Id.* (quotation omitted).

¶ 6. Defendant's first claim is that the second and third allegedly contemptuous statements should have been referred to another judge for nonsummary proceedings because his personal attack distorted the court's judgment and caused it to lose "that calm detachment necessary for fair adjudication." *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971). We disagree.

¶ 7. Under the Vermont Rules of Criminal Procedure, criminal contempt is punishable in two ways. "A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." V.R.Cr.P. 42(a). This kind of contempt is commonly referred to as direct contempt. See, e.g., *Whitaker v. Cloverdale Town Council*, 902 N.E.2d 885, 887 n.2 (Ind. Ct. App. 2009) ("Direct contempt . . . involves actions in the presence of the court, such that the court has personal knowledge

of them."). Alternatively, contempt not punishable under summary proceedings may be punished upon notice and hearing under Rule 42(b). In this more formal procedure, "[i]f the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent." V.R.Cr.P. 42(b).

■ ¶ 8. Although nonsummary proceedings for contempt involving disrespect to or criticism of a judge may require referral to another judge, we have rejected the notion that all direct contempts involving personal insults must be referred to another judge for proceedings pursuant to Rule 42(b). *State v. Allen*, 145 Vt. 593, 601, 496 A.2d 168, 172 (1985). In *Allen*, we reasoned that "[a] rule requiring that all flagrant personal insults be responded to only after delay would undermine the court's dignity and its authority." *Id.* Furthermore, we explained that because a judge is not "merely an individual," but rather "represents the authority of the law," when "a single remark insults both the individual judge personally and the sovereign authority that the judge represents, the personal aspect does not require use of the delayed procedure of [Rule] 42(b)." *Id.* at 601, 496 A.2d at 172-73. We cautioned, however, that "because there is always the possibility that a personal insult will cause the trial judge to lose that calm detachment necessary for fair adjudication, this Court must be ever watchful for distortion of the judge's sound discretion." *Id.* at 601, 496 A.2d at 173 (quotations omitted).

■ ■ ¶ 9. A trial court abuses its discretion by punishing a personally insulting direct contempt summarily, rather than referring it to another judge for nonsummary proceedings, when the record shows that the court harbored personal feelings against the contemnor or where the contempt is so severely insulting that we must assume such feelings exist. See *United States v. Meyer*, 462 F.2d 827, 839 (D.C. Cir. 1972) ("[O]nce a judge has been personally attacked in such a manner that a judge of ordinary sensibilities might naturally be expected to harbor marked personal feelings against the attacker, the law must assume that such feelings exist." (quotation marks and emphasis omitted)). Because the severity of the contempt at issue in this case did not exceed that which we expect trial courts to meet with professionalism and self-restraint, and because we see no evidence that the court lost its composure, we hold that the court acted within its discretion in punishing defendant's contempts summarily.

■ ¶ 10. Defendant's second claim is that the court's question, "Do you want to keep going, Mr. North?" invited his final statement and thus rendered it noncontemptuous. Although we would not condone a court taunting a contemnor by imposing punishment and inviting further discourse in the same breath, in this case the court's question served more as a warning than an invitation.

■ ¶ 11. "The historic power of summary contempt grew out of the need for judicial enforcement of order and decorum in the courtroom and to compel obedience to court orders." *Sacher v. United States*, 343 U.S. 1, 22 (1952). By longstanding tradition, courts are empowered "to impose silence, respect, and decorum[] in their presence," *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227 (1821), and we have long recognized that the "power to punish for contempt is indispensable to the proper discharge of [courts'] duties." *In re Cooper*, 32 Vt. 253, 257 (1859). Courts have broad discretion in summary contempt, but discretion has its limits. "Absolute discretion, like corruption, marks the beginning of the end of liberty." *New York v. United States*, 342 U.S. 882, 884 (1951) (Douglas, J., dissenting).

¶ 12. Several jurisdictions have taken the position that otherwise contemptuous statements are not punishable when invited by the court. The Louisiana Supreme Court has held that a statement in " 'response to a question by the judge which seemed to invite and encourage further verbal sparring' is not contemptuous." *State v. Bullock*, 576 So. 2d 453, 458 (La. 1991) (quoting *In re Masinter*, 355 So. 2d 1288, 1291 (La. 1978)). The Maryland Court of Special Appeals held that a judge may not find a defendant guilty of contempt after engaging in a dialogue that may provoke the defendant to commit the contempt. *Johnson v. State*, 642 A.2d 259, 264 (Md. Ct. Spec. App. 1994). These cases, however, presented more egregious provocation, invitation, and encouragement than the current case.

¶ 13. In *Bullock*, the court responded to the defendant's third "fuck you" with: "No, you, Mr. Bullock. Three counts in direct contempt of court consecutive, 18 months. Do you want to go for two years?" By beginning the retort with "No, you, Mr. Bullock," the court provoked the defendant by insulting him directly. Here, the court made no such insult. In *Johnson*, the court responded to the defendant's multiple vulgar, contemptuous statements by ask-

ing "What's wrong with you?" and proceeding to hold him in contempt ten consecutive times. That open-ended question explicitly invited and encouraged further dialogue. Here, in contrast, the court's yes-or-no question was a warning.

¶ 14. Because the court did not provoke, invite, or encourage the defendant's contemptuous statements, it acted within its discretion in punishing them.

¶ 15. Finally, we turn to defendant's claim that any contempt sentences should run concurrently rather than consecutively. Citing *Bullock*, he claims that where multiple acts are part of the same contemptuous episode, the appropriate penalty is concurrent sentences to run consecutively to any other sentences imposed. We agree.

██ ██ ¶ 16. In determining whether a series of contumacious remarks represents discrete contempts or constitutes a single contemptuous episode, it is appropriate to focus on "the factors of time and place and whether the offenses were motivated by a single criminal objective." *State v. Lingwall*, 637 N.W.2d 311, 314 (Minn. Ct. App. 2001) (citing *State v. Brown*, 597 N.W.2d 299, 305 (Minn. Ct. App. 1999)). Here, the exchange between defendant and the court occurred in one location and lasted approximately twenty seconds. It was not interrupted by any court proceedings other than citations for contempt. Cf. *Smith v. State*, 855 A.2d 339, 346 (Md. 2004) (affirming consecutive sentences where the defendant's contempt convictions "resulted from distinct acts, separated in time and focus by at least several minutes of unremarkable, normal discussion or exchanges arguably relevant to the purpose of the proceeding"). Furthermore, defendant's original insult and his renewed attack in response to the court's contempt sentence flowed from a single criminal objective — to flaunt his disrespect for authority in open court. The dissent points out "that the opportunity for further contempt arose from, and that the second and subsequent insult was inspired by, the trial court's contempt sentence and refusal to let the first insult pass without consequence." *Post*, ¶ 21. But acknowledging that the court's first contempt citation was inspiration for further contempt fails to negate the spatial and temporal proximity and the unified criminal objective of defendant's statements. The statements are properly characterized as a single contemptuous episode.

¶ 17. Having determined that defendant's three remarks formed a single contemptuous episode, we must next decide whether the

court abused its discretion by punishing the remarks with consecutive sentences. When multiple statements form such an episode, some jurisdictions have taken the relatively drastic approach of reversing convictions and vacating sentences for all statements except the first. See, e.g., *Butler v. State*, 330 So. 2d 244, 245 (Fla. Dist. Ct. App. 1976) (vacating five judgments of contempt where the six contempts were a single outburst); *Lingwall*, 637 N.W.2d at 315 (vacating two of three sentences where "there was not a sufficient break in [defendant's] conduct to make it separate behavioral incidents"). We might be more inclined to take this approach if separate sentences were imposed for elements of a unified contemptuous act rather than for separate acts that formed a single episode. See, e.g., *Commonwealth v. Williams*, 2000 PA Super. 165, ¶ 32, 753 A.2d 856 (vacating consecutive sentences and remanding for resentencing on one count of criminal contempt alone where the defendant's "verbal utterance and hand gesture were contemporaneously executed, and [the defendant's] hand gesture is universally recognized throughout Western civilization as having the same meaning as his foul utterance"). But here, defendant hurled a series of three separate insults at the court. Each insult was a distinct vulgar act. Restricting trial judges' authority to impose additional sentences for additional contemptuous acts would allow a contemnor to continue insulting the court without consequence and would thus undermine the judge's authority to maintain the order and dignity of the court. We decline to eviscerate in such a manner the power of summary contempt conferred upon trial courts by the rules of criminal procedure.

█ ¶ 18. However, if courts were to impose consecutive sentences for each statement "a defendant could conceivably amass decades of prison time in a matter of minutes as the result of a prolonged diatribe." *United States v. Murphy*, 326 F.3d 501, 504 n.3 (4th Cir. 2003). Such a result would be untenable. Accordingly, where, as here, multiple acts of contempt form a single contemptuous episode, the appropriate punishment is concurrent sentences, consecutive to other sentences imposed. *Bullock*, 576 So. 2d at 458. The court abused its discretion by imposing consecutive sentences for each of the contemptuous statements defendant made during the brief exchange.

¶ 19. In conclusion, the trial court acted within its discretion in holding defendant in contempt pursuant to Rule 42(a). However,

because all of defendant's statements were part of a single contemptuous episode, we amend the sentences to run concurrently to each other, consecutive to the sentence imposed for defendant's underlying conviction.

*The sentences for contempt are amended to run concurrently to each other, consecutive to the sentence imposed for defendant's underlying conviction.*

¶ 20. **Burgess, J.,** concurring in part and dissenting in part. Certainly the majority is correct to uphold the trial court's initial finding and punishment of defendant's direct contempt of court for profaning the judge upon receiving his sentences for the underlying crimes of false pretense and passing bad checks. Treating defendant's second and third rounds of insult to the judge as one and the same transaction is also supported by the circumstances. It does not follow, however, that defendant's choice to renew his verbal attack on the judge, after finishing his first attack, starting to leave court, and being called back for an additional sentence, is merely an extension of the first insult deserving of a single punishment. Because the record supports the trial court's finding and sentencing of two successive contempts of court, I respectfully disagree with lumping all of defendant's contumacy together as one single contempt and, so, dissent in part.

¶ 21. Defendant indulged in at least two separate instances of direct contempt. Having "told off" the judge once, defendant was in the process of leaving, was ordered back, and was summarily adjudged in contempt and sentenced for his completed insult to the court. Evidently not satisfied with his achievement to that point, defendant reasserted his contempt by renewing the insult for which he had just been sentenced. It cannot reasonably be doubted that the opportunity for further contempt arose from, and that the second and subsequent insult was inspired by, the trial court's contempt sentence and refusal to let the first insult pass without consequence.

¶ 22. As surely as the record reflects that the incidents were related, the record supports the trial court's response to defendant's renewed verbal abuse as a subsequent, and separate, contempt. In contrast to the majority's reliance on *Butler v. State,* this was not a situation where defendant engaged in an ongoing outburst intermittently interrupted by court warnings. 330 So. 2d 244, 245 (Fla. Dist. Ct. App. 1976). Nor did defendant merely add

visual emphasis to his expression in the tradition of the contemnor in *Commonwealth v. Williams*, whose finger gesture accompanying his profanity was deemed indistinguishable in meaning from his verbal expression, and was thus treated by the reviewing court as part of one simultaneous insult, rather than a separate contempt. 2000 PA Super 165, ¶ 32, 753 A.2d 856. The majority presents a closer, but still distinguishable, analogy in *State v. Lingwall*, 637 N.W.2d 311, 314-15 (Minn. Ct. App. 2001), where that appellate court rejected serial punishments for serial insults by a defendant, each insult following an interruption by the court to impose a summary consecutive sentence of contempt. Here, however, defendant's subsequent profanity followed not an interruption of any ongoing tirade, but was offered by defendant after a called — albeit almost immediate — halt to his exit after the original verbal assault was done, his return appearance before the court, and upon his hearing the court's contempt finding and sentence. That defendant was moved to start in again on the judge after less than a quarter minute break makes it no less a fresh attack, and warrants no less than a fresh sentence in consequence.

¶ 23. Whether that additional sentence is concurrent or consecutive is left to the trial court's discretion. The majority appropriately curbs that discretion to avoid a third consecutive sentence when the third insult was not reasonably distinguished from the second, and appears to be all part and parcel of the same name-calling exercise by defendant after being returned to the bench. But the second and third insult, considered together, is distinct from the first instance of contempt and may be separately sanctioned. Because another court might impose a different sentence or sentence structure does not amount to an abuse of discretion on the part of the trial court.* "[D]ifference in judicial opinion is not synonymous with abuse of judicial discretion." *Houran v. Preferred Accident Ins. Co.*, 109 Vt. 258, 269, 195 A. 253, 257 (1938) (quotations omitted), *abrogated on other grounds by Coop. Fire Ins. Ass'n v. White Caps, Inc.*, 166 Vt. 355, 358, 694

---

* The untenable risk, raised by the majority, of amassing decades of prison time in minutes "as the result of a prolonged diatribe" need not concern us here, since such a potential was not realized; nor could it be so for the second, although extended, session of contumacious comments by this defendant following his first.

A.2d 34, 36 (1997). Accordingly, the trial court's second consecutive sentence for direct contempt of court should be affirmed.

¶ 24. I am authorized to state that Chief Justice Reiber joins in this partial dissent.